Good morning, ladies and gentlemen. Our first case for this morning is the Construction and General Labor Union v. Town of Grand Chute. Mr. Eisenberg. Good morning, Your Honors. My name is Nathan Eisenberg. I represent the Plaintiff Appellants, Laborers Local 330, and Kelly Bus. May it please the Court. Enforcement of the Town of Grand Chute's sign ordinance against the Union, where it uses a large inflatable wrap balloon, is unconstitutional and an infringement on the Union's First Amendment rights. There's ample evidence in the record that the Town fails to enforce its sign ordinance against speech identical to that of the Union's, including non-enforcement for other signs on the public right-of-way, non-enforcement for other inflatable balloons in the Town, and non-enforcement for other temporary signs. So it would help me if you were to distinguish in your discussion between the old ordinance, basically, and the new 2015 law, because there may be some differences. You've got a lot of findings of fact from the district court that you need to deal with, with respect to the existing enforcement. Right. Well, so under the old ordinance, it was a little, the variances and the discretion that the code enforcer would have was a little less clear. So under the 2014 ordinance, there were provisions in that ordinance that allowed the code enforcer, in some situations, to make discretionary decisions where there was temporary signs, banners, and balloons for special events. And that's under 535.108.11 of the old ordinance. Under the new ordinance, I think it's clear that there is this unbridled discretion in the code enforcer's purview. Under 535.106.D.5 of the current version of the ordinance... Why is there any issue before us about the new ordinance? All of the events occurred while the old ordinance was in force. Sure. Upon remand, we amended the complaint to add the new ordinance. I know you did that, but my question is, why is there any live dispute before us? There's a couple reasons. First of all, we made it very clear upon remand to the district court that we are seeking damages stemming from the original enforcement. But that deals with action under the older ordinance. So, back to my question. Sure. Why is there any live dispute about the 2015 version? Because under the new ordinance, the town has said that there is never going to be a situation where the union is able to use the inflatable rat. The question is, how likely is it that the union will have a labor dispute in which that rat is to be staked in the median of a highway? The Supreme Court has said it can't just be hypothetical. There has to be a substantial likelihood. So, I'm looking for a reason why there is a substantial likelihood that this dispute will arise under the 2015 version. Sure. The union was able to identify four or five different projects which the physical geography made it desirable to use the rat, where the town's interpretation of the current ordinance would prohibit them from using the rat. What is the probability that there will be a labor dispute in which the union will be seeking to use the rat? It's very high, and that's why I'm saying... How often in the past has the union tried to use the rat in the town of Grand Chute? I don't think it had tried to do it before this. So, it's once. One is not a good means of predicting the probability. But one in the history of the town doesn't suggest that there are going to be lots more. No, but the union was able to identify three or four large projects. This is on page 25 of the district court's opinion, right, where you allege that there are several recently completed projects where you would have used the inflatables, but you did not because the town told you that the 2015 ordinance prohibited that action, and you complied with its ruling. That's correct. Rather than putting the rat up and having immediate enforcement when the town said it will enforce it against the rat, where there was a large project, and these are... I know the one example was there was a very large box store that was being erected, and the union would have used the rat on that side, but for the town's interpretation that its current version of the ordinance would prohibit the use of the rat. So you have these completed projects, and you also alleged that there are future specific planned projects? I don't know what the testimony looked like that underlay Chief Judge Griesbeck. At the time that this came up, those projects were still ongoing. I honestly, after the trial concluded, don't know if those projects have since been completed, but this is something that the union uses on an ongoing basis where there are projects, and particularly on streets where there is not walking traffic or passerbys where hand billing would work. On remand, this was a one-day trial, is that correct? That's correct. Was there actually any evidence presented of dollar amounts or individuals taking the stand and talking about damages? There were. What was that? The damages, I want to say that there were two or three people that were additionally required to come and use the rat because of the town's enforcement activities against the rat. So it was several additional people for several days. So the total dollar amount was not incredibly large. It was probably in the hundreds of dollars. So I want to go back to the 2015 ordinance for a minute, because you are relying in part on subpart capital D-5. No part of a sign can be used. At least that's what I understand you'd be arguing, that the discretion of the unique circumstances or unusual hardship is troublesome to you. But as I see this ordinance under F-5, inflatable signs are never permitted. Inflatables in general are never permitted unless you're in this community center sign district, and otherwise it's none. That is correct, except for- So isn't all or nothing permissible from a First Amendment point of view? Well, it would be if that's actually how the town was applying the ordinance. But we know that the town looks at other inflatables that are identical to the union's rat and doesn't treat them as signs in the first place. So where residents of the town want to decorate their lawns using an inflatable snowman or pumpkin- Councilman, that's one of the things that worries me. Your claim of imperfect enforcement rests on treating private property the same as the public way. What's the basis for that? I'm not trying- Say that a municipality or a state can ban private structures on public land, even if they're free to erect them on private land. I'm not trying to treat them as the same. But that's what you just did. You said, well, you can inflate things on your private property, and therefore this is not a ban on all inflatables. It is a ban on inflatables in the public way, and it seems to me we need to decide this case based on the treatment of things on public land, not on private land. And my point here- Could I just ask for clarification? Because Subpart D of the new ordinance, I think the old ordinance was very clear about the distinction that Judge Easterbrook is talking about. But I read Subpart F5 to cover all land in Grand Chute. It just says, must be placed a minimum of 10 feet from any property line. So I didn't see a distinction in the new ordinance for the inflatable signs between public and private. There's two questions there. Let me see if I can address both of them. I'm not trying to make a distinction versus the public erection of signs on the public right-of-way and private property. My point is that in one situation where a resident inflates one of these balloons that stay to the ground, the town has made a decision not to treat it as a sign in the first place. So Santa Claus or Olaf or Frosty the Snowman are just decorations? The town treats them as holiday decorations. Now, if the union's rat was to be treated as a holiday decoration, then it wouldn't violate the prohibition on signs on the public right-of-way. So the distinction here is what constitutes a sign, not the location of the sign. That's the distinction that I'm making by using the residential signs. Because if the town applied the same standard for evaluating what is a sign on the union's rat, then the union's rat wouldn't violate the prohibition. And so that is a content-based and speaker-based distinction that the town makes in its enforcement. Judge Wood, your question dealt then with this Subpart 5 involving inflatable signs. The first sentence of that ordinance talks about that inflatable signs are permitted only on lots in the community center sign district. And that encompasses only commercial property within the town of Grand Chute. That term, community sign district, is defined elsewhere in the regulation. And so what that means is that the only place that inflatable signs that could be used in the town of Grand Chute would be on commercial property. And so the inflatable signs that residents are using, if you treat it as a sign and not as a holiday decoration, would be prohibited. And that actually exists also under the prior version of the ordinance, where it only allowed inflatables to be used with respect to businesses. So under both the old and the new ordinances, when you treat those as signs, the residents' use of those would violate the ordinance. But instead, the town has decided that they are not going to interpret those as being as signs. The other point that I would want to get to with this public and private distinction is that there needs to be a reason involved with regulating. And so there's no correlation there between the public and private property. If something is aesthetically unpleasing, it's going to be aesthetically unpleasing wherever it's located. And the same is true if it's a distraction to traffic. So really, that distinction between public and private property is misleading. It's the interpretation of what is a sign in the first place. And so, again, if... I want to go back and ask a somewhat different question. One other aspect of this analysis is whether there are adequate alternative ways for the union to convey its message. And the union says only, well, there's not very much foot traffic on some of these busy roads like College Avenue. Cars are whizzing by. They don't read things. But it seems in this record that the district court compiled that there are other alternatives. You know, a large banner could be used. Somebody could be dressed up as a rat. You could have a giant picture of a rat. As we said in our oral argument before, maybe you could just have people holding the rat instead of having it tethered to the ground. Why aren't there alternative mechanisms for your message? Well, the union entered evidence at trial that those alternatives were ineffective when they had attempted them. So after the rat was initially removed back in 2014, the union went to try and do things like bannering, like handheld signs. And they were totally ineffective given the location of the dispute. So you're dealing with a frontage road that is in front of a very busy road, one of the busiest roads in the town of Grand Chute. And so things like banners, things like handheld signs, things like handbills were just totally ineffective given the location of the site. Is that because of the size of the, quote, distraction, end quote? I'm trying to unpack when you say ineffective. How ineffective? Well, again, this is the main road in from the interstate through Grand Chute to the town of Appleton. So traffic is moving quite fast on this road. And this is on a frontage road where there's virtually no traffic. And it's in front of a large construction site. This wasn't a small car dealership. This is a massive car dealership. So to hold a handheld sign or to even dress in a rat costume, that's not going to be seen by traffic that's going on College Avenue. And that was the problem that the union encountered after they were forced to take down the inflatable rat. So your argument does go to size, correct? Well, yes, there is an element of that. But it goes to what is going to be able to be observable to convey the union's message in a way that's seen by traffic. Obviously, lengthy words on banners as cars are whizzing by are not going to be effective in the way that the symbolic speech of the rat was easily identifiable by passerby. And so, again, there needs to be some, when we're talking about ample alternatives, there needs to be the effectiveness of the speech involved. But a lot of the alternatives that you look to to show disparate enforcement were actually much smaller, like the little fill the boot sign that was propped up for the muscular dystrophy fundraiser. A lot of those were actually rather small. The fill the boot sign was actually, it wasn't that small. It might not have been as large as the rat. It wasn't anywhere near as large as the rat. Wasn't it sort of the size of you standing there at that podium? It could be. It could be. And let's talk about the fill the boot sign, because that was a sign that was erected on the right of way by the town's employees. And the town there said that, well, that sign is okay, but the union sign is not okay, because it was attended and leaning. It wasn't leaning, of course. It was a freestanding sign that was erected on the public right of way. Which kind of a tent, right, kind of sign? It was on a metal easel that was erected on the right of way. Right, right. So the town keeps calling it leaning, but it was leaning on another sign that they erected on the right of way. And so there, you again have a situation where the town is allowing signs to be erected on the right of way, but making these sort of abstract distinctions. Again, those distinctions need to go back to the town's proffered reasons for prohibiting signs on the right of way in the first place. So if the reason for prohibiting signs on the right of way is safety and aesthetics, a sign that is on top of the easel that is erected on the right of way presents the exact same safety and aesthetic challenges as the rat does. But you do concede, though, I mean, we touched on this a bit in our former opinion, that if the union's entitled to put this giant rat on the public right of way, then everybody else has to be able to do the same thing, regardless of message, regardless of speaker. So the town is stuck with this clutter it up with everything versus try to achieve nothing. I don't think so. I know that in the prior opinion, there is this situation talking about ad hoc exceptions. The town already makes ad hoc exceptions. They make ad hoc exceptions for signs on the right of way on weekends, for farm stands, for swap meets. That's your contention, but the district judge found otherwise. You really have to be arguing that that's clearly erroneous. Just repeating a contention that the district court found not to be factually correct doesn't really help. It doesn't help you or us. Yeah, I think the district court made a number of factual findings, and then there are issues that he made that were mixed questions of law and fact, and in a case like this, need to bear special scrutiny. In fact, there are a number of factual findings that the district court made that really support the finding of content discrimination. In fact, the district court made specific findings that there was a discussion of the content of the union's message when the original enforcement took place, and this is in the short appendix on page 75 and 76. Initially, the police officer who was in charge of enforcing the ordinance talked about the fact that they could use the rat because it was for a non-commercial purpose. He also said there was confusion about whether or not the rat was a sign. These are factual findings that the district court made. He then erred, I think, when he found that that wasn't content discrimination, but he was making those factual findings. He also found that the motivation for enforcement was likely content-driven, at least when it came to the motivation of the representative of the property owner. Counsel, I'm not sure why the behavior or motive of anybody except Mr. Thiele matters. He was the enforcement officer. I'm sure that there are plenty of cops on the beat who don't perfectly understand the town's zoning laws. The fact that you can point to a confused officer doesn't tell us anything about the policy of the town, which is effectively the policy of Mr. Thiele, so I wish you'd address the findings about him. Okay. What the district court talked about is that Mr. Thiele, Mr. Thiele's boss, Officer Reifstack, and Officer Reifstack's boss, all had a meeting prior to making a final decision about enforcement, and during that meeting the content of the union's message was specifically discussed within the context of whether or not the union's rat was assigned in the first place. In addition, Mr. Thiele and his boss then specifically amended the ordinance with the rat in mind to prevent the use of the rat in future situations. I wonder if you're overstating that, though. Wasn't one of the exceptions a carpenters' union? Explain that to me. One of the examples of the unwritten exception was a carpenters' union, another union, correct? I'm not following you. I thought the examples were the boot, the abortion protesters, a carpenters' union. Each of them had fallen to the unwritten exception. I think that there was a banner that was erected by another union, but that sign was handheld. It was a large banner, but it was still handheld, and it's a little bit of a different exception. I took from your argument some kind of anti-union animus to this meeting, and my point of making the carpenters' union example was there was another union which didn't have that problem. Right, and again, I think the point of that meeting was they were specifically talking about the union's use of the rat in this specific situation. Okay, so my time is up. All right, your time is up, so thank you. Mr. Hannes. Good morning. May it please the Court, my name is David Hannes, and I represent the defendant appellee, the town of Grand Chute. It will probably come as no surprise that the town agrees with the district court's decision in its entirety, including the district court's factual determinations from the evidence that was presented at trial. So I have some questions for you, less about the historical 2014 ordinance, where we have actually a fairly lengthy record of Mr. Thiel's enforcement actions, and more about the new ordinance. I don't understand how you're supposed to draw the distinction between an inflatable thing that's a sign and an inflatable thing that's a decoration.  That distinction is one that Mr. Thiel articulated in response to questions as to how he viewed inflatable holiday decorations, such as snowmen, Halloween decorations, and that sort of thing, when erected on private property. Well, the ordinance defines inflatable sign to be any sign constructed of fabric or other flexible material that takes on a three-dimensional shape when filled with air. And then it goes on with that definition to have a special rule for inflatables. They're permitted only in this commercial district. So why isn't, like, a big Santa a Merry Christmas sign? Why isn't a big pumpkin, you know, Happy Halloween? I don't understand. Unless you're taking the position that art isn't communication, which I think would be a tough one to take. The town is not taking the positions that Frosty the Snowman or other similar inflatables could be a sign or would be a sign as defined under the ordinance. But what I'm trying to say is why aren't they? Because you have one of two possibilities. One is to say that somehow there's a difference between a giant Santa or an Olaf or a Frosty or something else and, you know, a picture of a child for muscular dystrophy or the rat or some other communicative inflatable. And, you know, I just don't know how you do that. If there is a difference, then maybe you can enforce them differently. But if there isn't, it seems that the record suggests that Mr. Thiel is allowing nice inflatables and he's taking down annoying ones. I think the critical distinction, Your Honor, is the location where the inflatables were erected. But I don't see that because Part 5 says inflatable signs are permitted only on lots in the community center sign district. And you have argued that the placement provision doesn't apply to inflatables, that they're just prohibited except in the community center sign district. That's correct, Your Honor. So people's front lawns are not in the community center sign district. That's correct, Your Honor, under the new ordinance. And that's what I'm talking about, the new ordinance. Yes. And if there were an instance where an inflatable, regardless of the appearance of that inflatable sign, whether it's a rat or a snowman or an elf or Frankenstein, if an inflatable were erected under the new ordinance anywhere outside of the community center sign district, you're correct, under the new ordinance, that would be a violation. Right. And so if a temple wanted a big inflatable menorah outside, it would be told you can't do that. Under the new ordinance, yes. The new ordinance could be enforced against that application of an inflatable outside of the community center district. However, that is not the circumstance before the court. There was no violation of the new ordinance in play in this case. Well, I mean, the union says, and the district court accepted, that there had been a number of instances in which the town had said, if you put the rat up, we will go after you. And if we're going to be accepting the district court's findings, I don't know why we would do that. And I'm a little worried about Mr. Thiel's testimony, where around 188 of the transcript, son redirect, he's reminded, he was asked the question, what would happen if somebody put an inflatable rat in their lawn? Would that be an inflatable sign, or would that be a holiday decoration? He said, I guess it depends. You'd have to make a determination for the purpose, yes. So if somebody put a Santa hat in the rat, it might be okay. And your answer was, it might be okay. So a rat with a Santa hat is okay, and the other rat isn't okay? Your Honor, I'm going to concede that Mr. Thiel's testimony in that regard presents exactly the problem that I think you're getting at here. However, I think it's inane to the application or enforcement of either ordinance as it relates to the union's activities in this case, and the union's intent to erect an inflatable within the confines of the public right-of-way. But that's not what the new ordinance says. You're correct, Your Honor. And that's my problem. You know, if you, you know, after Reid against Town of Gilbert, after these recent cases, you could say no signs, and you'd probably also be able to have a no left turn sign there. I mean, you could reserve the right to have city safety signs only or something of the sort. But what I'm concerned about under the new ordinance, which strikes me in some ways as worse than the old ordinance, is that distinctions are being drawn based on the message conveyed by the inflatable thing. You purport to forbid them altogether in the town of Grand Chute, except in the community center sign district. But then Mr. Thiel is admitting that that's not what he's doing. He's making a decision about each inflatable, trying to decide if it's some kind of message or trying to decide if it's a decoration. I don't understand the difference. I think he was asked that question in a hypothetical sense. It was not the circumstance before him. But he had made clear he wasn't going to enforce against Santa's and Rudolph's and whatever else you have. True enough. But until that specific instance of enforcement or lack thereof comes before the court or comes before the court in the context of an area standards protest by the union attempting to use a rat in some application that would be in violation of the ordinance. I don't think that issue is actually justiciable in this case. Mr. Thiel's sort of off-the-cuff reaction with regard to how he views inflatable holiday-related signs on someone's front lawn on their private property, I wouldn't characterize that as a considered response with regard to how the new ordinance would be applied as it relates to inflatables, holiday decorations on private property. But listen to yourself. You're drawing distinctions that are found nowhere in this ordinance. You're correct, Your Honor. I mean, I'm not sure that you're right. If they're making a facial challenge to this on First Amendment grounds and the town has its fingers crossed, you know, saying, yeah, but we're not really going to do it for Santa's and we're not going to do it on private property and we're not going to do it, that's not the ordinance you passed. Your correction, Your Honor, the ordinance, the current ordinance, the 2015 ordinance,  All right, so in the community center sign district, you can have a giant Michelin tire man, if you want, in front of a tire store, I get that, you know, and fine, have that. But I don't see the private property distinction that you apparently used to have. The old ordinance really does talk specifically about the public right-of-way, which could have constitutional significance. And the old ordinance doesn't require this medieval distinction between inflatables that are decorations and inflatables that have a message. Right. And I would agree, Your Honor, that that distinction is not one that should be made in the enforcement of either ordinance. And I acknowledge Mr. Thiel's testimony with regard to how he views Frosty the Snowman or other similar decorations as being holiday decorations. And when it comes to Mr. Thiel, les tassez-moi. I mean, Mr. Thiel is the enforcer. Correct, but until that enforcement action comes before the court, until there's been a violation of the ordinance and an enforcement action under that ordinance, I don't think that issue is... So essentially you're saying we need to wait for the union to call to the town's attention somebody's Santa Claus on a front yard and say, okay, you know, Mr. Thiel, please go over there and give them a citation. Or maybe more directly, Your Honor, for the union to erect the rat balloon somewhere outside of the town center district or on private property. What you're trying to show, though, is not that you're going to enforce against the rat. You've made that very clear. The question is, would you enforce against the other things? And they tried to put examples in the record. Those examples largely dealt with the 2014 ordinance. Mr. Thiel had his answer to the ones that he was able to address. But you haven't done that. I think that the real question is, under this new ordinance, is Mr. Thiel going to start handing out tickets to people who have inflatable decorations on their private property? I think notwithstanding his testimony characterizing these types of inflatables as decorations versus signs, I think we have to wait for that instance of enforcement or lack of enforcement to arise and to become part of the record for the court to consider whether there's a problem with the constitutionality of the ordinance, either on its face or in its application. We simply don't have that record before the court. And there's another problem, too, with the inflatable signs provision. It says, I suppose speaking of the ones in the community center sign district, inflatable signs require a permit, period. I don't see any criteria for the permit other than five days. And that, Your Honor, I believe goes to the issue of unbridled discretion and whether an element of unbridled discretion, such as a permitting requirement, makes the ordinance unconstitutional on its face. And Judge Griesbach commented on the permitting requirements or exceptions, even in the new ordinance, that appear to vest the town with discretion, perhaps could be characterized as unbridled discretion, and he questioned whether the new ordinance would be unconstitutional on its face for that reason. Again, I think before that comes before the court, before that specific issue comes before the court, it's not one for the court to address in this case. I don't think that there's any real dispute in this case that the 2014 ordinance, the one that was applied and enforced against the WRAD as part of this various standards protest, is constitutional on its face. I don't think that there's any genuine dispute that it is contents neutral. Well, we found in our previous opinion that sitting there reading it, it was neutral. The question that we asked for exploration on remand was whether there were discrepancies in enforcement. The district court held the one-day trial, made its findings a fact. Your opponent says maybe the underlying facts are fine, but some of the inferences that he drew were troublesome. That's correct, Your Honor. And so I don't think the case turns on the question of facial validity, but rather whether the enforcement of the old ordinance, the 2014 ordinance, was unconstitutional in its application. The union alleged that the enforcement of the old ordinance was predicated on the contents of the message or the identity of the speaker. And the union, in fact, offered a number of factual points at trial in an effort to argue for an inference of discriminatory intent or discriminatory motive on the town's part in enforcing the ordinance against the rat balloon. One of those circumstances that the union pointed to as being evidence that should lead to an inference of discriminatory motive was the sign within the confines of the public right-of-way that was observed by Lieutenant Riefstack and was nonetheless allowed to remain without. Right. No, we understand that because it wasn't staked in. So I take it your position is, even today, if the union wanted to send some people out with a giant 10-foot-by-10-foot balloon saying XYZ company hates unions with a giant picture of a rat on it, that would be fine. That's correct, Your Honor, as well as a variety of other means to convey the same message using the same visual depictions. A giant banner with that same rat, as long as it was handheld, would be appropriate. Other similar balloons would have been permissible, provided that they had not been staked to the ground. I think, as the Court postulated in the previous go-around, the tethers could have been held by people as opposed to physically anchored into the ground, as was the case with the rat balloon in this case. Someone could dress up in a rat costume. Well, they said that's not big enough because people are zooming down. I'm trying to think of something that's big enough to get attention on the public right away so that it would really fulfill the messaging. On the theory that size matters, they could have used a similar-sized balloon that had tethers attached to it, holding those tethers as opposed to physically anchoring them in the ground. They were also told by Lieutenant Riefsteck that they could place the same rat balloon in the bed of a pickup truck. Well, there's a lot of factual ambiguity about that, whether the pickup would have to be driving around the block, whether you could park it there on the service road. If it was just parked, that would be one thing. A giant rat bouncing around the back of a pickup seems like a safety detriment, not a safety plus. Your Honor, I think the point of that dialogue was really to demonstrate that the balloon and the message represented by the balloon was not being targeted, whether as a practical matter it would have been a good idea to put it in the back of a pickup truck and drive it around. That's open to questions. Well, they didn't want to drive it around because they would have run up into a different labor law problem because the rat might have mistakenly been associated with some other business that was perfectly fine from a labor law standpoint. They don't want to do that. That's true enough. There was some ambiguity in Lieutenant Riefsteck's testimonies to what he meant by it had to be mobile, whether that meant that it had to be capable of being moved or, in fact, in motion. But the point of it all was really to show that, in fact, the balloon itself and the message conveyed by the balloon was not being targeted. It was the fact that it was a sign that was affixed within the public right-of-way in violation of the ordinance that led to the enforcement action. All right. Your time is up, so we thank you. Your time expired, Mr. Eisenberg, but I will give you one minute if you wish to rebut. I thought I had reserved five minutes. No, you have to watch the time. I exceeded that, too. You have to watch the time. Okay. I just had two quick points that I wanted to make. First of all, I take issue with the town's assessment that this was not right because these challenges hadn't come up yet. Every example that the union brought to the court's attention was entered into Mr. Thiel's enforcement log and then was part of his enforcement proceedings. So where the union raised these issues in affidavits submitted in the court, it went right into the town's enforcement logs, and the town made a decision not to apply its ordinances to those signs. So you have signs like the Santa's that are in the enforcement log where the town says we're doing nothing. Right. Okay. And that also goes with it was 96 examples that the union had identified of other signs that would potentially violate the ordinance, and I think in this situation the judge's findings were clearly erroneous because what happened is Mr. Thiel waited six months and then went out and tried to see if he could locate these temporary signs. And again, that's not the same thing as that we are dealing with here. There's lots and lots of signs all over the town. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.